IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHITNAPHA SOMBOONMEE,

vs.                                                    Case No.: 3:10cv167/MCR/EMT

ERIC HOLDER, UNITED STATES
ATTORNEY GENERAL, et al.,

---

## REPORT AND RECOMMENDATION

This matter is before the court upon the Federal Defendants' motion to dismiss Plaintiff Chitnapha Somboonmee's Petition for Review and Declaratory Judgment (doc. 15), Plaintiff's response (doc. 16), and the Federal Defendants' reply (doc. 20). In response to the court's order (doc. 23), the parties have filed a notice of intent to proceed (doc. 24) and a notice of supplemental procedural information (doc. 25). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the motion to dismiss should be granted, as this court lacks jurisdiction over the instant challenge.

### Background

Plaintiff Chitnapha Sonboonmee petitioned this court to issue a declaratory judgment stating that the final order of denial of her motion to reopen by the United States Citizenship and Immigration Services ("USCIS") is arbitrary and capricious and that the underlying I-485 denial was arbitrary, illegitimate and unconstitutional.

Because Defendants' motion is based upon Fed. R. Civ. P. 12(b)(6), the facts as alleged in the complaint are taken as true for the purpose of this motion.

Plaintiff is a native and citizen of Thailand and was born on September 24, 1987 (doc. 1 at 3, ¶ 3). On September 27, 2005, three days after Plaintiff's eighteenth birthday, her mother Maliwan Minks married Gerald Minks, a U.S. citizen, in Thailand (*id.* at 2-3, ¶ 1). As a result of the

marriage, Mr. Minks submitted forms I-130 (Petition for Alien Relative) and I-129F (Petition for Alien Fiance(e)).  On May 18, 2006, Mrs. Minks received a K-3 Visa (non-immigrant visa for a Spouse) and Plaintiff received a K-4 Visa (non immigrant visa for a child).[1]  After entering the United States on July 12, 2006[2] (doc. 1 at 3, ¶ 2), on February 28, 2008, Plaintiff and her mother filed forms I-485 (Application to Register Permanent Residence or Adjust Status) to adjust their status to that of lawful permanent residents ("LPR") (*id.* at 3, ¶ 4).  Plaintiff's application was not accompanied by a Form I-130 filed by Mr. Minks on her behalf since she was over eighteen years old (*id.* at 3, ¶5).  USCIS later requested evidence of the filing of an I-130 immigrant petition, but Mr. Minks was unable to produce or file one because no immediate relative relationship existed between him and Plaintiff (*id.* at 3, ¶ 8).[3]

Plaintiff states that Mr. Minks had hired Alex Hansen, an "immigration agent" at APVisa, to assist the family with their immigration needs, and her step-father relied on Hansen's assurances that her application would be approved (*id.* at 3–4, ¶ 9).  Mr. Hansen never mentioned a deadline in filing a response, appeal, or motion to reconsider, and Mr. Minks only learned of these options shortly before Plaintiff filed her Motion to Reopen on July 24, 2009, after consulting with the attorney who is now counsel of record (*id.* at 4, ¶¶ 10-13).  The USCIS summarily denied Plaintiff's Motion to Reopen as untimely (*id.* at 5, ¶ 14).

---

[1] The USCIS website explains that the K-3 and K-4 Nonimmigrant visas allow the alien spouse of a U.S. citizen and his or her minor children to be admitted to the U.S. as nonimmigrants while they are awaiting the adjudication of Form I-130. The site also explains "In order for a K-4 who is a step-child of a USC to immigrate as a relative of the USC step-parent (whether through adjustment of status in the United States or an immigrant visa abroad) the marriage between his or her parent and the USC must have occurred before his or her 18th birthday." *See* http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnexto id=254a3e4d77d73210VgnVCM100000082ca60aRCRD&vgnextchannel=254a3e4d77d73210V gnVCM100000082ca60aRCRD (last accessed on July 18, 2011).

[2] Plaintiff's petition states that she and her mother entered the United States on July 12, 2007 (doc. 1 at 3, ¶2).  However, attachment one to Defendants' motion to dismiss, a Notice to Appear issued by the U.S. Department of Homeland Security, reflects an admission date of July 12, 2006, with permission to remain for a period not to exceed July 11, 2008 (doc. 15, exh. 1).

[3] There is no paragraph 6 or 7 in the petition.

Plaintiff's petition for review raises four challenges to the immigration proceedings.  She claims that (1) that the USCIS erred in finding her motion to reopen untimely; (2) that issuing a K-4 visa to an individual between 18 and 21 years of age but not allowing the individual to adjust status is illogical and inconsistent with the INA's family reunification objective; (3) that requiring an I-130 to be filed in order for K-4 visa holders to adjust their status is an unjust and unconstitutional requirement when there is no such requirement for K-2 visa holders; and (4) that denial of her I-485 is unconstitutional.

The Federal Defendants have moved to dismiss, contending that this court lacks jurisdiction over the complaint pursuant to 8 U.S.C. § 1252 and the Administrative Procedure Act ("APA"), that it lacks jurisdiction due to Plaintiff's placement in removal proceedings, that Plaintiff has failed to exhaust her administrative remedies, and that she has failed to state an Equal Protection Claim.

In response, Plaintiff asks that the motion to dismiss be denied, or in the alternative, that this action be administratively closed so Plaintiff can seek and exhaust the newly-arisen administrative remedy.

## Analysis

A federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005); University of South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) (once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).  A court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.  Although Defendants' motion to dismiss in this case is based in part on a lack of jurisdiction, a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.  Bochese, 405 F.3d at 975 (quoting University of South Alabama, 168 F.3d at 410).  Attacks on subject matter jurisdiction can be facial or factual.  *See* Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir.1990).  A facial attack on the complaint requires the court merely to determine whether Plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion.  Stalky v. Orlando Reg'l Healthcare Sys., 524 F.3d 1229, 1232–33 (11th Cir. 2008) (quotations and citations omitted).  "By contrast, a

factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* At all times, however, "the burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim." Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1248 n.2 (11th Cir. 2005); *see also* Ishler v. Internal Revenue, 237 Fed. Appx. 394, 395 (11th Cir. 2007) ( "Ultimately, the plaintiff bears the burden of establishing subject matter jurisdiction."); Lovern, 190 F.3d at 654 (citing Thomas v. Gaskill, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942)).

The existence of federal jurisdiction ordinarily depends on facts as they exist when the complaint is filed. Newman-Green, Inc. v. Alfonso-Larrain, 490 U.S. 826, 830 (1989). However, it is well established that an actual controversy must exist throughout the course of the litigation, and not just at the commencement of the case. Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)) (an actual controversy must exist throughout the litigation, not just when the case is filed); American Federation of Labor an congress of Idus. Organizations v. City of Miami, FL., 637 F.3d 1178 (11th Cir. 2011) (citing Arizonans); Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). In some limited circumstances, subsequent events may render a case non-justiciable, such that no federal court would have jurisdiction. *See, e.g.,* Hose v. I.N.S., 180 F.3d 992, 996 (9th Cir. 1999).

After the parties submitted their briefs, the Eleventh Circuit decided Ibarra v. Swacina, 628 F.3d 1269 (11th Cir. 2010), which is virtually directly on point. In Ibarra, an alien plaintiff sought judicial review of USCIS's denial of her I-485 application. The district court dismissed her complaint under the APA, 5 U.S.C. § 701 *et seq.*, for lack of subject matter jurisdiction. It found that she had not exhausted her administrative remedies as required by the APA because before seeking judicial review she had to go through removal proceedings. 628 F.3d 1269 (11th Cir. 2010). The Eleventh Circuit affirmed the district court's ruling. Citing the Supreme Court's decision in Darby v. Cisneros, the appellate court noted that under the APA, judicial review is not available until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." Ibarra, 628 F.3d at 1269 (quoting Darby v. Cisneros, 509 U.S. 137, 146 (1993)). The court noted that it is only at that point, after total exhaustion, that an agency action is final and therefore subject to judicial review. *Id.* (quoting Darby, 509 U.S. at 146 (quoting 5 U.S.C. § 704)).

The Eleventh Circuit further observed that title 8 C.F.R. 245.2(a)(5)(ii) allows an alien to renew his or her application for adjustment of status during removal proceedings, and that pursuant to regulations, once the alien is in removal proceedings, the presiding immigration judge has "exclusive jurisdiction" to adjudicate any application for adjustment of status.  *Id.* (citing 8 C.F.R. § 1245.2(a)(1)).

In addition to the Eleventh Circuit, at least four other courts of appeals have found that district courts lack jurisdiction to review denials of an adjustment of status application because of the availability of an administrative remedy during removal proceedings.  *See* Cardoso v. Reno, 216 F.3d 512 (5th Cir. 2000); McBrearty v. Ferryman, 212 F.3d 985 (7th Cir. 2000); Randall v. Meese, 854 F.2d 472 (D.C. Cir. 1988); Howell v. INS, 72 F.3d 288 (2d Cir. 1995); *but see* Chan v. Reno, 113 F.3d 1068, 1071 (9th Cir. 1997) (finding the exercise of jurisdiction to be appropriate despite alien's ability to renew challenge during removal proceedings).  *See also* Davies v. Gonzalez, No. 6:06-cv-1436-Orl-31UAM, 2007 WL 2120312, 2007 U.S. Dist. LEXIS 52924 (M.D. Fla. July 23, 2007) (adopting the majority position and holding that the district court lacked jurisdiction because plaintiff could renew her claims during removal proceedings); Huang v. Napolitano, 2010 WL 3283561 (D. Ariz. 2010) (reaching opposite conclusion than that reached in Chan, 114 F.3d at 1068)).  The Fifth and Seventh Circuits held that the district court did not have jurisdiction over the alien's challenge even though no removal orders were then pending.  Cardoso, 216 F.3d at 518 (court lacked jurisdiction because plaintiff could renew her request for adjustment of status "upon the commencement of removal proceedings"); McBrearty, 212 F.3d at 987 (suit was premature because plaintiffs "could obtain review of the district director's decision . . . if and when the immigration service institutes removal (i.e., deportation) proceedings against them").

The plaintiff in Ibarra was in removal proceedings at the time of the Eleventh Circuit's decision, although she was not yet in removal proceedings at the time her case was before the lower court.  *See* Ibarra v. Swacina, 2009 WL 4506544 *9 (S.D. Fla. 2009).  Clearly, then, the initiation of removal proceedings during the pendency of her case did not affect the outcome.[4]  In the case at

---

[4] The Eleventh Circuit commented in a footnote that it did not have before it and therefore did not decide whether it had jurisdiction under the APA if the alien has not yet been placed into removal proceedings.  628 F.3d at 1270 n.2.

bar, Plaintiff Somboonmee is in removal proceedings, although they began after she initiated this action.   Allowing this case to proceed would negate the provision of the C.F.R. that provides exclusive jurisdiction to the immigration judge.   8 C.F.R. § 1245.2(a)(1).   And, as noted by Defendants and the court in Ibarra, remand to the USCIS would be futile, as it has been divested of jurisdiction by this same provision.   Plaintiff's exclusive remedy lies with a renewed challenge during removal proceedings before the immigration judge, and this court does not have jurisdiction to consider her claim.

Based on the foregoing, it is respectfully **RECOMMENDED**:

That the Government's motion to dismiss (doc. 15) be **GRANTED**, and this case should be dismissed and the clerk should be directed to close the file.

At Pensacola, Florida, this 18th day of July 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**